**In re J. A. EDGE.**

Court of Appeals of Kentucky.

May 13, 1955.

Rehearing Denied Nov. 4, 1955.

. Clem F. Kelly, Lexington, for respondent.

J. D. Buckman, Jr., Atty. Gen., John B. Browning, Asst. Atty. Gen., for Kentucky State Bar Assn.

PER CURIAM.

The Board of Bar Commissioners of the Kentucky State Bar Association has recommended that J. A. Edge, of Lexington, be suspended for one year from the practice of law in Kentucky. The recommendation is based upon a finding that Mr. Edge, having been retained to file a particular suit, thereafter filed another suit without the knowledge or authority, and in fact against the instructions of his client.

Under employment by Mrs. Lucille Chumbley Bradberry, of Athens, Georgia, Mr. Edge filed suit in her name, in the Federal District Court in Kentucky, against several persons alleged to have been engaged in conducting gambling operations in Richmond, Kentucky, seeking to recover gambling losses alleged to have been sustained by Mrs. Bradberry's brother, George Chumbley. A short time later a secondary suit was filed in the circuit court of Madison County, Kentucky, against the same defendants, for the purpose of securing an attachment.

Mr. Edge's employment by Mrs. Bradberry grew out of telephone conversations and correspondence with her and her husband, and their family attorney in Georgia, after George Chumbley had consulted Mr. Edge concerning the bringing of an action to recover his gambling losses. It is clear that Mrs. Bradberry consented to act as plaintiff solely because of her desire to assist her brother in recouping his losses, and that she was not otherwise interested in locking horns with the gambling fraternity.

Before the first suit was filed, Mr. Edge was required to send the pleadings to the Bradberrys' Georgia attorney, for his approval.

After the initial suits were filed, the agreement under which Mr. Edge was employed was reduced to writing. The written agreement, after reciting that Mr. Edge was employed to prosecute "a claim for treble damages under Chapter 372 of the Kentucky Revised Statutes in the United States District Court for the Eastern District of Kentucky," stated that he was authorized "to file whatever other actions may be necessary for the protection of said client." However, it was further provided that Mr. Edge was to "prosecute this claim by and through the advice and counsel" of the Bradberrys' Georgia attorney.

The initial action in Federal Court remained dormant from September 7, 1951, until some time in June 1952. It then began to appear that there might be some difficulty in establishing the jurisdictional amount necessary to maintain the action in Federal Court. Mr. Edge then wrote to Mrs. Bradberry, enclosing some newspaper clippings which purported to show some relations between one of the Richmond gamblers and Adolph Rupp, nationally known basketball coach of the University of Kentucky. Mr. Edge suggested the

possibility of broadening the scope of the litigation so as to include other claims. On June 27, 1952, the Georgia attorney sent the following letter to Mr. Edge:

"Dear Mr. Edge:
"Your letter came this morning. I went over the file enclosed with Mr. Bradberry. We are returning the clipping as requested.

"Mr. Bradberry says and I think properly so that he and his wife do not desire to get in any litigation other than that involving Mr. Chumbley. Mrs. Bradberry, of course, is anxious to obtain all recovery possible in that suit but doesn't want to get involved in any of the other matters. They can't see their way clear to sue on any other claim. I am not sure that we can get up to Lexington because I don't know of any business bringing me that way any time soon and it would take us about three days to get up to Lexington, spend the day and come back, and I can ill afford the time and Mr. Bradberry can't be away very well from his own business. We will be pleased to hear from you further as it becomes necessary to do so.

"Very truly yours,
"/s/ Abit Nix."

Nothing further developed until September 10, 1952, when there was a telephone conversation between Mr. Edge in Lexington, and George Chumbley, the Bradberrys and their attorney in Georgia. There was a discussion concerning the necessity of George Chumbley's coming to Lexington to give proof to sustain the jurisdictional amount in the action then pending, and the probability of the action having to be dismissed if the jurisdictional amount could not be established. There was some discussion also concerning the possible enlargement of the litigation. The testimony of the Bradberrys and their Georgia attorney is that there positively was no consent or agreement to the bringing of a broader action, while Mr. Edge says that he received the impression that he was to use his discretion in the matter.

On September 15, 1952, Mr. Edge moved to dismiss the original suit in Federal Court, but he did not advise the Bradberrys or their local attorney of this fact. On November 4, 1952, the Georgia attorney wrote Mr. Edge inquiring as to the status of the suit, but Mr. Edge did not reply.

On March 20, 1953, without any notice to the Bradberrys or their Georgia attorney, Mr. Edge filed in the Federal Court a new action in the name of Mrs. Bradberry, in which Ed Curd of Lexington, Frank Costello (the nationally known gambler) and Adolph Rupp were named as defendants. The complaint alleged that the defendants had conspired and confederated in various gambling schemes, including the corruption of college basketball players in connection with "point spreads". The action sought recovery of more than half a million dollars, in the name of Mrs. Bradberry, for losses alleged to have been sustained by numerous unnamed persons.

The filing of the suit was given wide publicity throughout the country, in newspapers and on the radio. Upon learning of the suit through the press, Mrs. Bradberry immediately disclaimed any knowledge of or responsibility for the suit, and demanded of Mr. Edge that he cause the suit to be dismissed. Mr. Edge then moved to dismiss the suit, but the defendants objected to a voluntary dismissal, and at their insistence the facts surrounding the bringing of the suit were made of record by taking and filing the depositions of the Bradberrys, their Georgia attorney, and George Chumbley. Subsequently the Federal Court entered an order dismissing the action.

In the proceedings before the trial committee of the Bar Association, in the disciplinary proceedings brought against Mr. Edge, the only evidence introduced to support the charges consisted of the depositions taken in the Federal Court in connection with the dismissal of the Rupp suit. Mr. Edge objected to the admission of these depositions, on the ground that under section 585 of the Civil Code, which was made applicable to disciplinary proceedings by RCA 3.370, the depositions

833

could not be used as evidence without having been filed before the commencement of the hearing. The trial committee admitted the depositions over the objection, and Mr. Edge now maintains that this was prejudicial error.

There are at least two reasons why this contention is not sustainable. In the first place, the proceedings against Mr. Edge were conducted after the Rules of Civil Procedure became effective on July 1, 1953, and therefore section 585 of the Civil Code was not applicable. There is no provision in the Rules specifically prohibiting the use of a deposition upon a trial unless filed before trial. In the second place, even if there was a technical error in the admission of the depositions, we are not convinced that it was prejudicial. The issue in the Federal Court, on which the depositions were taken, was the same as that before the trial committee, i. e., did Mr. Edge bring the suit without the consent and against the wishes of his client? Mr. Edge was present at the taking of the depositions, and his interest then, as it was before the trial committee, was to justify his conduct in the filing of the suit. He had a full opportunity to cross examine for the purpose of presenting his side of the case.

An adjournment of the hearing before the trial committee, to enable the formal filing of the depositions, would have availed nothing to Mr. Edge.

There is no claim that the trial could not be had on depositions, on the theory that an attorney in disciplinary proceedings is entitled to confront the witnesses against him. Any such claim would not be sustainable, because it is well settled that disciplinary proceedings are civil in nature. 5 Am.Jur., Attorneys at Law, sec. 287, p. 434; Lenihan v. Commonwealth, 165 Ky. 93, 176 S.W. 948, L.R.A.1917B, 1132.

Mr. Edge seeks to justify his conduct on the basis that he honestly interpreted the written contract with his client as authorizing him to bring any action he deemed necessary, and that in the telephone conference on September 10, 1952, there was no objection voiced to the bringing of an enlarged suit, or, at least, there was an objection only to bringing in more plaintiffs, and none to bringing in more defendants.

In view of (1) the provision of the written contract stating that the claim was to be prosecuted by and through the advice and counsel of the Georgia attorney, (2) the fact that Mr. Edge was required to submit the pleadings in the original suit to the Georgia attorney, (3) the letter of June 27, 1952, and (4) the testimony of the Bradberrys and their Georgia attorney as to what was said in the telephone conference of September 10, 1952, we can find no basis for an honest belief by Mr. Edge that he had authority or permission to bring the enlarged suit. Furthermore, although the suit did not by name bring in additional plaintiffs, the object of the suit was to prosecute claims other than those of George Chumbley, which Mr. Edge admits Mrs. Bradberry did not want done.

We do not attempt to say that the mere bringing of an ordinary action without the consent or even against the directions of a client, is in all cases grounds for disciplinary action against an attorney. However, where the nature of the action or of the parties defendant is such as to result in widespread publicity and to subject the client to substantial embarrassment, and the action goes far beyond the scope of the client's claim, it is our opinion that the attorney has not only violated his duty to his client but has tended to bring the entire profession into disrepute. We can find no justification for Mr. Edge's conduct, and we believe it was of such a character as to require disciplinary action.

The recommendation of the Board of Bar Commissioners is adopted, and it is ordered that J. A. Edge be suspended from the practice of law in Kentucky for a period of one year.